IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN and KATRINA DAVIS,

    Plaintiffs,

v.                                                                                                       1:18-cv-00415-LF-SCY

NEW MEXICO DEPARTMENT OF
GAME AND FISH, WYATT HARWELL,
BENJAMIN OTERO, JAKE BAULCH,
DARREL COLE, TYLER JACKSON,
ALEX COLE, and TREVOR NYGREN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on defendants New Mexico Department of Game and Fish, Wyatt Harwell, Benjamin Otero, Jake Baulch, Darrell Cole, Ty Jackson, Alex Hansell,[1] and Trevor Nygren's (collectively "State Defendants") Motion and Memorandum to Dismiss Count III on the Basis of Qualified Immunity and Failure to State a Claim (Doc. 17), as well as their Motion and Memorandum to Dismiss Plaintiffs' Claims in Counts I, II, and IV on the Basis of Governmental Immunity (Doc. 18), filed on August 23, 2018. Plaintiffs filed their responses to the State Defendants' motions on September 20, 2018 (Docs. 21, 22), and defendants filed their replies on October 17, 2018 (Docs. 25, 26). The parties have consented to me to conduct dispositive proceedings in this matter, including motions and trial, and to order the entry of final judgment. Docs. 7, 8, 9. Having read the submissions of the parties and being fully advised, and for the following reasons, the Court GRANTS the State Defendants' motions.

---

[1] The State Defendants assert that plaintiffs incorrectly identified Ty Jackson as "Tyler" Jackson, incorrectly identified Alex Hansell as Alex "Cole," and misspelled Darrell Cole's name as "Darrel" Cole in the complaint. The Court will accept this assertion and use these defendants' correct names in this order.

I.      **Relevant Facts**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all facts alleged in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It also must view these factual allegations in the light most favorable to the plaintiffs. *See id.* Viewing the facts alleged in the complaint in this manner, the complaint establishes the following:

Plaintiffs Bryan and Katrina Davis are residents of Rio Arriba County, New Mexico, and have worked for many years as hunting tour guides there. Doc. 1-2 ¶¶ 1, 2. The Davises have enjoyed good reputations, both personally and as hunting guides. *Id.* ¶ 3. The New Mexico Department of Game and Fish is an agency of the State of New Mexico. *Id.* ¶ 4. The individual defendants—Wyatt Harwell, Benjamin Otero, Jake Baulch, Darrell Cole, Ty Jackson, Alex Hansell, and Trevor Nygren—are employees of the New Mexico Department of Game and Fish who worked in Rio Arriba County and are residents of New Mexico. *Id.* ¶ 5.[2]

The Davises broadly assert that "Game and Fish has been harassing Plaintiff[s] and anyone who is known to associate with their business," and that "[e]ach of the NM Game and Fish employees has taken part in this harassment." *Id.* ¶ 5.[3] They further assert that "Defendants" have falsely accused plaintiffs of illegal hunting, made those accusations to others in the community, and that these accusations have damaged plaintiffs' reputation. *Id.* ¶ 6.

On March 26, 2016, "Game and Fish" "raided" the Davises' house, looking for evidence relating to Cody Davis. *Id.* ¶ 7. At the time of the raid, the Davises were hosting a landowners' appreciation barbecue, and many of those in attendance subsequently decided not to do business with the Davises because of the raid. *Id.* "Game and Fish" "questioned and harassed" the

---

[2] There are two paragraphs numbered 5 in the complaint. This reference is to the first one.

[3] This reference is to the second paragraph number 5 in the complaint.

Davises many times prior to the raid.

Approximately 20 months later, on December 17, 2017, the Davises gave a friend a free hunting tag and took him hunting free of charge. *Id.* ¶ 9. While they were hunting, "Game and Fish" pulled the Davises over and "harassed" them and their guest. *Id.* "Game and Fish" took the guest behind the pickup and "interrogated" him about how he knew the Davises. *Id.* According to the complaint, the guest felt intimidated and scared. *Id.*

The day before this incident, on December 16, 2017, someone stopped the Davises and asked them for their licenses in an attempt to harass and intimidate them. *Id.* ¶ 10. "Later Game and Fish Officers" were in a restaurant in Cuba, New Mexico, at the same time as a friend of the Davises. *Id.* ¶ 11. The "Game and Fish Officers" asked the Davises' friend for his phone number, and they told him that as long as he tells the truth about the Davises, he wouldn't have any problems. *Id.* The "Game and Fish Officers" stopped the Davises' friend later that night and "interrogated" him without cause. *Id.*

The complaint further alleges that at some point, "Game and Fish" "brought a helicopter onto the property and flashed guns" at the Davises. *Id.* ¶ 12. At some other time, but presumably before April 2016, during an investigation of "Cauy" Davis's brother Cody Davis,[4] "the Game and Fish Department placed a tracking device on Cody Davis's vehicle, which entered into Cauy and Katrina Davis's property," which helped law enforcement obtain a warrant that was served in April 2016. *Id.* ¶ 13.

According to the complaint, Game and Fish's statements and actions have exposed "Plaintiff"—Bryan or Katrina Davis—to hatred, contempt, ridicule and obloquy. *Id.* ¶ 14.

---

[4] The complaint does not further describe or identify Cauy Davis or Cody Davis, or their relationship to plaintiffs Bryan and Katrina Davis. *See* Doc. 1-2.

3

Further, as a result of the actions described in the complaint, the Davises have suffered loss to their reputation, shame, mortification, and injury to their feelings. *Id.* ¶ 15. They also have lost business, and their business's profitability and their relationship with community members potentially has been affected. *Id.*

**II.     The Complaint**

Count I of the complaint alleges that Game and Fish slandered the Davises. *Id.* ¶¶ 16–20. Count II of the complaint alleges that Game and Fish harassed the Davises. *Id.* ¶¶ 21–25. Count III of the complaint alleges that the State Defendants violated one of the Davises'[5] rights under the New Mexico Constitution and the United States Constitution to be free from unreasonable searches and seizures. *Id.* ¶¶ 67–71. Count IV alleges that "Defendant"—without specifying which defendant—trespassed on "Plaintiff's" property—without specifying which plaintiff—"by entering his home without consent with a tracking device on Cody Davis's vehicle." *Id.* ¶¶ 36−38.

**III.    Discussion**

The State Defendants argue in their motion to dismiss count III that because plaintiffs fail to allege sufficient facts that any of the individual defendants were personally involved in any constitutional violation, and because § 1983 claims cannot be brought against state agencies or against state officials in their official capacities, the Court must dismiss plaintiffs' federal constitutional claims. Doc. 17 at 7−9. They further assert that even if there were sufficient facts supporting the personal involvement of any of the individual defendants, these defendants would be entitled to qualified immunity. *Id.* at 9−10. The State Defendants also argue that plaintiffs

---

[5] The complaint only refers to a singular plaintiff's right to be free from unreasonable searches and seizures but does not state which plaintiff's rights were violated. Doc. 1-2 ¶¶ 27, 28, 32−35. The Court presumes that this is a result of sloppy drafting, and that the plaintiffs intended to allege that both plaintiffs' constitutional rights were violated.

4

have failed to allege sufficient facts to state a claim under the New Mexico Constitution. *Id.* at 10−11.

The State Defendants also argue that the Court should dismiss plaintiffs' remaining tort claims—those alleged in counts I, II, and IV—because plaintiffs have failed to allege sufficient facts showing that governmental immunity has been waived on those claims. Doc. 18 at 5−6. They further argue that the Court should dismiss plaintiffs' harassment claim in count II because it does not fall within one of the enumerated statutory exceptions to immunity, and no such tort exists under New Mexico common law. *Id.* at 6.

Plaintiffs respond that the State Defendants' motions are not timely under FED. R. CIV. P. 81(c)(2). Doc. 21 at 3; Doc. 22 at 3. They also argue that none of their claims in count III are brought under § 1983, but instead are brought exclusively under the New Mexico Tort Claims Act. *See* Doc. 21 at 3−5. They further argue that neither the state, nor any of the individual defendants are immune from suit. *See* Doc.21 at 4; Doc. 22 at 3−6. For the following reasons, the Court finds that the plaintiffs' arguments are without merit, and it will dismiss plaintiffs' complaint.

**A. Motions to Dismiss Generally**

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions. *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id*. (citation omitted). A complaint survives only if it "states a plausible claim for

relief." *Id*. (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id*. (internal quotation marks omitted) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### B. Section 1983 Claims

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The

6

plaintiff also must identify an "affirmative link" between the alleged constitutional violation and each individual defendant. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

**C. Timeliness**

The Davises argue that the State Defendants' motions are untimely under FED. R. CIV. P. 81(c)(2), which required defendants to "answer or present any other defenses or objections no later than May 9, 2018." Doc. 21 at 3; Doc. 22 at 3. Because the State Defendants removed this action from state court, then answered the complaint rather than moving to dismiss under FED. R. CIV. P. 12(b)(6), and because they did not file their motions to dismiss until August 23, 2018, the Davises say that the motions are not timely and should not be granted for that reason alone. *See id.*

Plaintiffs are correct that there are time limitations for asserting certain defenses, including the defense of failing to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6) ("A motion asserting any of these defenses [including failure to state a claim] must be made before pleading if a responsive pleading is allowed."). But the Rules also permit this defense to be raised in an answer, in a motion for judgment on the pleadings, and at trial. FED. R. CIV. P. 12(h)(2). As permitted by the Rules, the State Defendants raised "failure to state a claim" in their Answer. Doc. 6 at 5. They also could have raised it in a motion for judgment on the pleadings, *see* FED. R. CIV. P. 12(h)(2)(B), which must be filed "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). Further, the legal standards that apply under Rule 12(b)(6) are the same as those that apply under Rule 12(c). *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011). Thus, although it may be technically correct that the State Defendants' motions should have been labelled motions for judgment on the pleadings under Rule 12(c), not motions for failure to state a claim under Rule 12(b)(6), the

7

correct label isn't important. *See id.*; *see also Albers v. Board of County Com'rs of Jefferson County, Colo.*, 771 F.3d 697, 704 (10th Cir. 2014) ("whether the district court dismissed the complaint based on a motion under Rule 12(b)(6) or Rule 12(c) makes no difference for purpose of [the Court's] review"); *Muller v. Vilsack*, 13-cv-0431 MCA/KK, 2015 WL 13665433, *4 (D.N.M. Mar. 30, 2015) (unpublished) (because defendant's "mislabeling of his motion has no substantive import, the Court construes Vilsack's Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings"). If the Court construes the State Defendants' motions as motions for judgment on the pleadings under Rule 12(c) rather than motions to dismiss under Rule 12(b)(6), their motions are timely. The State Defendants filed their motions after the pleadings were closed, but early enough not to delay trial. *See* FED. R. CIV. P. 12(c). The Court therefore will construe the motions as motions for judgment on the pleadings under Rule 12(c), and as such, they are timely.

### D. Plaintiffs' Constitutional Claims (Count III)

#### 1. *Federal Constitutional Claims*

To state a Fourth Amendment claim under § 1983, a plaintiff must allege sufficient facts to show a violation of the Fourth Amendment, "and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Suits for damages under § 1983 are further restricted by both the Eleventh Amendment to the United States Constitution and § 1983 itself; they cannot be brought against state agencies or against state officials in their official capacities. *See Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d

1114, 1117 (10th Cir. 2010). A suit for damages against a state official in his or her official capacity is essentially a suit for damages against the state itself; it therefore is barred by the Eleventh Amendment to the United States Constitution. *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985). A suit for damages under § 1983 also cannot be brought against a state official in his or her official capacity because such a suit can be brought only against a "person," and a state official being sued in his or her official capacity is not a "person" within the statutory meaning of the word. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

In this case, the Davises make no effort to describe in their complaint what any individual defendant did to violate either of their Fourth Amendment rights. *See* Doc. 1-2. Most of the allegations relate to actions that "Game and Fish" purportedly took, which the Davises allege is "an agency of the State of New Mexico." *Id.* ¶ 4. But because the Davises cannot sue a state agency under § 1983, the Court must dismiss the federal constitutional claims against the New Mexico Department of Game and Fish, and any of its employees acting in their official capacities. And because the Davises have failed to plead facts that show that any of the individual defendants were personally involved in a deprivation of the Davises' Fourth Amendment rights, the Court also must dismiss the § 1983 claims against the individual defendants.

Plaintiffs agree that "the State of New Mexico and its officials acting in their official capacity are immune from a suit under § 1983." Doc. 21 at 4. They argue that "it can be reasonably construed [that the individual defendants] . . . are being sued in their individual capacities and acting under 'color of law,' making them 'persons' within the meaning of § 1983 . . . ." *Id.* at 5. While this may be true, the Court cannot evaluate a federal constitutional claim against any individual defendant because the Davises have not pled any facts that show

what any individual defendant did to violate the Davises' Fourth Amendment rights. Plaintiffs further argue that "Defendant Game and Fish" can be held liable for the Davises "constitutional injuries . . . caused by its policies or customs." *Id.* Again, however, the Davises have not identified any policy or custom of the Department of Game and Fish[6] that was the "moving force" behind the violation of the Davises' Fourth Amendment rights. *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). The Davises have failed to state a federal constitutional claim upon which relief can be granted.

2. *State Constitutional Claims*

The Davises also allege that "Defendant New Mexico Game and Fish, its agents and employees, without a valid search warrant or consent, searched Plaintiff's home and harassed Plaintiffs and their guests," in violation of the New Mexico Constitution. *See* Doc. 1-2 ¶ 27.

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

N.M. Const. art. II, § 10. The Davises, however, fail to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678.

---

[6] It also is not obvious that the Department of Game and Fish could be held liable under a policy or custom theory. The Eleventh Amendment protects states, not municipalities, and liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) is limited "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Will*, 491 U.S. at 70 (quoting *Monell*, 436 U.S. at 690, n.54); *see also Zuni Public School Dist. No. 89 v. State Public Educ. Dept.*, 2012-NMCA-048, ¶ 10; 277 P.3d 1252, 1255 ("The Eleventh Amendment of the United States Constitution immunizes states and their officers acting in an official capacity from claims for money damages or in equity arising under a federal question, unless the state consents to suit.").

For the purposes of this motion, the Court will disregard the conclusory allegations that "Game and Fish" searched the Davises' home without a valid search warrant[7] or consent, and that "Game and Fish" "unlawfully" "raided" the Davises' house. *See id.* Aside from these conclusory allegations, the complaint has so few details and is so imprecise that it's difficult to follow. Although there's an assertion that on March 26, 2016, "Game and Fish" "raided" the Davises' house, there is no information as to whether "Game and Fish" did so with or without a warrant. *See* Doc. 1-2 ¶ 7. There's also an allegation that "Game and Fish" "brought a helicopter onto the property," but it is not clear whether this was in conjunction with the "raid," or on some other day, and it's not even clear whether it was the Davises' property, although the Court presumes that it was. *Id.* ¶ 12. There's another allegation that "Game and Fish" put a tracking device on a third person's vehicle, which then "entered into Cauy[—whoever he is—] and Katrina Davis's property," which helped law enforcement obtain a search warrant that was served in April 2016. *Id.* ¶ 13. But it's not clear whether the April 2016 search warrant was then used to search the Davises' property, nor is it clear whether the alleged "raid" on March 26, 2016 was related to the April 2016 search warrant.

The Davises should know and be able to plead at least some of the following specific facts: a description of the property that was searched and who owns it or resides there; the day on which the property was searched; who conducted the search; whether the people who conducted the search had a warrant; if there was a warrant, what facts were alleged in the application for a warrant; how the search was conducted; whether any property was seized during the execution of the search; and where the helicopter landed and whether the helicopter

---

[7] It's not clear whether the Davises are alleging that the search was conducted without any warrant, or whether there was a warrant but it was invalid for some reason.

was present in conjunction with the execution of the search. As it stands, the complaint only states that the Davises' property was "raided" and searched, but there is insufficient detail for the Court to determine the plausibility of the Davises' claim that they were subjected to an *unreasonable* search and seizure. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) ("While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement."); *see also Ramer v. Place-Gallegos*, 1994-NMCA-101, ¶ 8, 118 N.M. 363, 365, 881 P.2d 723, 725 (The "pleadings . . . must tell a story from which . . . the essential elements prerequisite to the granting of the relief sought can be found or reasonably inferred.") (internal quotation marks and citation omitted), *overruled on other grounds by Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 31, 123 N.M. 170, 178, 936 P.2d 852, 860. The Davises' complaint thus fails to state a claim under article II, section 10 of the New Mexico Constitution.

### E. Plaintiffs' Tort Claims (Counts I, II, and IV)

The State Defendants argue that plaintiffs have failed to state a claim against the named individual defendants because the complaint fails to allege sufficient facts to conclude that any of the individual defendants are "law enforcement officers" under the New Mexico Tort Claims Act ("NMTCA") for whom immunity is waived. Doc. 18 at 5−6; Doc. 26 at 2−5. Plaintiffs disagree, claiming that the Court can infer, based on the allegations in the complaint, that each individual defendant is a law enforcement officer as that term is defined under the NMTCA. *See* Doc. 22 at 3−4. The plaintiffs' position is untenable.

The NMTCA was enacted to "compensate those injured by the negligence of public employees and to impose duties of reasonable care," while at the same time limiting

"governmental liability so that [the] 'government should not have the duty to do everything that might be done.'" *Cobos v. Doña Ana Cnty. Hous. Auth.*, 1998-NMSC-049, ¶ 6, 126 N.M. 418, 421, 970 P.2d 1143, 1145. The NMTCA balances these two important public policies by granting governmental entities and public employees general immunity from tort liability, but waiving that liability in specific defined circumstances. *Id.* If no specific waiver can be found in the NMTCA, a plaintiff's complaint against a public employee or a governmental entity must be dismissed. *Begay v. State*, 1985-NMCA-117, ¶ 10, 104 N.M. 483, 723 P.2d 252, *rev'd on other grounds sub nom. Smialek v. Begay*, 1986-NMSC-049, 104 N.M. 375, 721 P.2d 1306; *Williams v. Bd. of Regents of Univ. of N.M.*, 20 F. Supp. 3d 1177, 1186 (D.N.M. 2017).

The Davises argue that immunity for the State Defendants was waived under § 41-4-12 of the NMTCA. *See* Doc. 22 at 6–10. Section 41-4-12 provides as follows:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. STAT. ANN. § 41-4-12. The Davises assert that the individual defendants qualify as law enforcement officers under the NMTCA. The NMTCA defines "law enforcement officer" as an officer "whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes . . . ." N.M. STAT. ANN. § 41-4-3(D).

As the State Defendants point out, the sole allegation regarding the individual defendants is that they "are all employed by NM Game and Fish." Doc. 26 at 3 (quoting Doc. 1-2 ¶ 5). The individual defendants are not mentioned anywhere else in the complaint. *See* Doc. 1-2. Although the Davises argue that the Court reasonably could conclude that the individual

defendants are either game wardens or conservation officers because the complaint elsewhere alleges that "Game and Fish" "pulled over, interrogated, flashed guns, flown [sic] helicopters, executed searches with and without warrants, and placed GPS trackers on vehicles," *see* Doc. 22 at 3−4, the lack of specificity in the complaint prohibits that inference. Based on the complaint, the Court has no idea whether any of the individual defendants did any of these things, and if so, what things. The Court cannot reasonably infer that any individual defendant is a game warden or conservation officer.

Moreover, New Mexico courts have construed the definition of "law enforcement officer" strictly. *Rayos v. State ex rel. New Mexico Dept. of Corrections, Adult Probation and Parole Div.*, 2014-NMCA-103, ¶ 8, 336 P.3d 428, 431, *cert. granted*, 2014-NMCERT-10, 339 P.3d 426. Whether employees are law enforcement officers turns on whether the employees' "principal duties, those duties to which they devote a majority of their time, [are] of a law enforcement nature." *Id.*, 2014-NMCA-103, ¶ 9, 336 P.3d at 431. Although the Davises assert that the Court should infer that the individual defendants are either game wardens or conservation officers, they only provide the statutory duties of conservation officers. *See* Doc. 22. If any or all of the individual defendants are game wardens, the Court has no basis for determining to what tasks they devote the majority of their time. If any of the individual defendants are conservation officers, the statutory duties of conservation officers are relevant, but these duties are not the only information that the Court considers in determining whether they are law enforcement officers. *See Rayos*, 2014-NMCA-103, ¶ 8, 336 P.3d at 431 (stating that courts may consider departmental job descriptions, affidavits, statutes or regulations— among other items—in determining the duties of public employees); *see also Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1251 (10th Cir. 2006) ("even if a public

employee is authorized to exercise some of the traditional functions of law enforcement officers, he or she does not necessarily come under the waiver provision" of the NMTCA). In short, the allegations in the complaint do not state sufficient facts for the Court to conclude that any of the individual defendants are law enforcement officers for whom immunity has been waived.

The State Defendants further argue that the Davises' tort claims against the New Mexico Department of Game and Fish must be dismissed because a state agency cannot be a "law enforcement officer" under the NMTCA. Doc. 18 at 6 (citing *Fernandez*, 462 F.3d at 1250 and *Dunn v. McFeeley*, 1999-NMCA-084, ¶ 23, 127 N.M. 513, 519, 984 P.2d 760, 766). The Davises argue that the State Defendants' reading of *Dunn* is too simplistic, and that the analysis is more "nuanced." Doc. 22 at 5. The Court agrees that the fact that an agency—the Department of Game and Fish—cannot be a law enforcement officer is not the end of the inquiry. As both *Fernandez* and *Dunn* make clear, although an agency itself cannot be a law enforcement officer under the NMTCA, an agency can be held vicariously liable for the torts of its law enforcement officer employees. *See Fernandez*, 462 F.3d at 1250 (plaintiff's tort claim against district attorney's office rests on its potential liability for individual defendant's conduct because agency itself cannot be a "full-time salaried public employee" as required by the definition of "law enforcement officer"); *Dunn*, 1999-NMCA-084, ¶ 23, 127 N.M. at 519, 984 P.2d at 766 ("An agency may, however, be liable for the misconduct of an employee who is a law enforcement officer.") (citing *California First Bank v. State*, 1990-NMSC-106, ¶ 18, 111 N.M. 64, 68–69, 801 P.2d 646, 650–51). But before the Court can determine whether vicarious liability may exist, the Davises must allege sufficient facts that at least one individual defendant employee of the Department is a law enforcement officer. This they have not done. Counts I, II, and IV will be dismissed.

### F. Plaintiffs' Harassment Claim (Count II)

With respect to the Davises' harassment claim, the State Defendants argue that the Court should dismiss this claim because it is not one of the torts listed in § 41-4-12 of the NMTCA for which immunity has been waived. Doc. 18 at 6. In response, the Davises argue that even though harassment is not one of the enumerated torts, the State Defendants deprived the Davises of a statutory right, and thus immunity has been waived for this claim. *See* Doc. 22 at 6−10. The Court can find no legal support for the Davises' argument. The NMTCA does not waive immunity for the Davises' claim in count II.

As noted in the preceding section, § 41-4-12 specifically waives immunity "for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of . . . New Mexico . . . ." N.M. STAT. ANN. § 41-4-12. As explained by the New Mexico Supreme Court, the NMTCA "waives immunity for three types of claims: (1) the commission of an enumerated common-law tort; (2) the deprivation of a statutory right; and (3) the deprivation of a constitutional right." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 20, 121 N.M. 646, 652, 916 P.2d 1313, 1319. Harassment obviously is not one of the listed torts for which immunity is waived under § 41-4-12, and the Davises seem to concede this. *See* Doc. 22 at 9−10. They claim instead that because "harassment" is a crime under N.M. STAT. ANN. § 30-3A-2, the State Defendants' alleged violation of that statute constitutes negligence per se, which then somehow transforms the alleged harassment into a deprivation of the Davises' statutory right. Their argument is without merit.

"[I]t is well established in New Mexico that Section 41-4-12 immunity is not waived in an action for negligence standing alone." *Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 19, 148 N.M. 831, 836, 242 P.3d 398, 403. Negligence per se is the same as simple negligence except that the standard of care is defined by statute rather than by common law. *See Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 22, 143 N.M. 657, 663, 180 P.3d 664, 670. The NMTCA thus does not waive immunity for negligence per se either. *See Williams v. Board of Regents of University of New Mexico*, 20 F. Supp. 3d 1177, 1194 (D.N.M. 2014) (dismissing negligence per se claim based on Emergency Medical Treatment and Active Labor Act because immunity had not been waived under the NMTCA); *see also Ramer*, 1994-NMCA-101, ¶ 15, 118 N.M. at 366−67, 881 P.2d at 726−27 (affirming dismissal of sexual harassment claim because sexual harassment was not among the enumerated torts for which immunity was waived under § 41-4-12). The fact that the Davises may be able to state a negligence per se claim against the State Defendants for their alleged violation of the criminal harassment statute does not establish that immunity has been waived for such a claim under the NMTCA.[8] The Court therefore will dismiss the Davises' harassment claim.

**G. Dismissal with Leave to Amend**

In their responses, the Davises request permission to "amend their Complaint to rectify any issues with pleading." Doc. 21 at 2; Doc. 22 at 2. At this juncture, Rule 15(a)(2) permits

---

[8] The Davises argue at length with respect to count II that the NMTCA waives immunity for a law enforcement officer's deprivation of their Fourth Amendment rights and their rights under the New Mexico Constitution to be free from unreasonable searches and seizures. *See* Doc. 22 at 6−9. Count II, however, does not mention either the United States Constitution or the New Mexico Constitution. Doc. 1-2 ¶¶ 21−25. The Davises' constitutional claims are raised in count III of their complaint. *See id.* ¶¶ 26−35. Thus, the Court's discussion of count II does not affect the Davises' ability to move to amend their complaint to attempt to state claims under the federal and state constitutions.

plaintiffs to amend their complaint only with the court's leave, but the rule instructs that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Because it appears that plaintiffs conceivably could amend their complaint to allege facts sufficient to support at least some of their claims, their claims in counts I, III and IV will be dismissed without prejudice. However, because it appears that immunity has not been waived under the NMTCA for the Davises' negligence per se claim based on the criminal harassment statute, and that any amendment would be futile, count II will be dismissed with prejudice.

**IV.  Conclusion**

For the foregoing reasons, the Court GRANTS the State Defendants' Motions to Dismiss (Docs. 17, 18) as follows:

(1) Plaintiffs' claims in counts I, III and IV of their complaint are dismissed in their entirety without prejudice.

(2) Plaintiffs' harassment claim in count II is dismissed with prejudice.

(3) Plaintiffs will have until March 19, 2019 to move to amend their complaint to the extent that they are able to do so consistent with federal pleading requirements. Should plaintiffs move to amend their complaint, the proposed amended complaint must be attached to their motion in compliance with D.N.M.LR-Civ. 15.1.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge