IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN and KATRINA DAVIS,

     Plaintiffs,

v.                                            1:18-cv-00415-LF-SCY

NEW MEXICO DEPARTMENT OF
GAME AND FISH, WYATT HARWELL,
BENJAMIN OTERO, JAKE BAULCH,
DARREL COLE, TYLER JACKSON,
ALEX COLE, and TREVOR NYGREN,

     Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on defendants New Mexico Department of

Game and Fish, Wyatt Harwell, Benjamin Otero, Jake Baulch, Darrell Cole, Ty Jackson, Alex

Hansell,[1] and Trevor Nygren's (collectively "State Defendants") Motion for Judgment on the

Pleadings to Dismiss Count I of Plaintiffs' First Amended Complaint on the Basis of Qualified

Immunity and Failure to State a Claim (Doc. 38), as well as their Motion and Memorandum for

Judgment on the Pleadings to Dismiss Plaintiffs' Claims in Counts II, III, IV and V on the Basis

of Governmental Immunity (Doc. 47), filed on July 24, 2019 and August 23, 2019, respectively.

Plaintiffs filed their responses to the State Defendants' motions on August 7, 2019 (Doc. 41) and

September 20, 2019 (Doc. 48), respectively, and defendants filed their replies on August 23,

2019 (Doc. 46) and October 10, 2019 (Doc. 51), respectively.  The parties have consented to me

to conduct dispositive proceedings in this matter, including motions and trial, and to order the

---

[1] The State Defendants assert that plaintiffs incorrectly identified Ty Jackson as "Tyler" Jackson, incorrectly identified Alex Hansell as Alex "Cole," and misspelled Darrell Cole's name as "Darrel" Cole in the complaint. *See, e.g.*, Doc. 38 at 1 n.1; Doc. 47 at 1 nn.1–2.  The Court will accept this assertion and use these defendants' correct names in this order.

entry of final judgment.  Docs. 7, 8, 9.  Having read the submissions of the parties and being fully advised, and for the following reasons, the Court GRANTS the State Defendants' motion to dismiss count I (and count III, to the extent that count III purports to state a federal constitutional claim).  Because there are no further federal claims, I decline to exercise jurisdiction on the remaining claims in counts II, III, IV, and V, and I REMAND this case the First Judicial District Court for a determination of plaintiffs' state tort claims.

## I.  <u>Relevant Facts and Procedural Posture</u>

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).  *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).  In analyzing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all facts alleged in the complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It also must view these factual allegations in the light most favorable to the plaintiffs.  *See id.*  Viewing the facts alleged in the first amended complaint in this manner, the first amended complaint establishes the following:

Plaintiffs Bryan and Katrina Davis are residents of Rio Arriba County, New Mexico, and provide guiding and outfitting services to hunters in New Mexico.  Doc. 33 ¶¶ 5, 18.  The New Mexico Department of Game and Fish is a political subdivision of the State of New Mexico.  *Id.* ¶ 6.  The individual defendants—Wyatt Harwell, Benjamin Otero, Jake Baulch, Darrell Cole, Ty Jackson, Alex Hansell, and Trevor Nygren—are employees of the New Mexico Department of Game and Fish who worked as conservation officers or game wardens and are residents of New Mexico.  *Id.* ¶¶ 8–15.  Plaintiffs assert that all the individual defendants were law enforcement officers who were acting within the scope of their duties and under color of law with respect to the events alleged in the first amended complaint.  *Id.* ¶ 16.

On March 26, 2016, the day before Easter, the individual defendants each participated in a search of plaintiffs' home. *Id.* ¶ 19. Each of the individual defendants was uniformed and armed, and they arrived in "marked units." *Id.* The individual defendants arrived at plaintiffs' home at about 2:30 pm. *Id.*

Defendant Hansell approached plaintiffs and told them that the individual defendants were there to execute a search warrant on plaintiffs' home. *Id.* ¶ 20. None of the individual defendants had a paper copy of the search warrant, but they instead showed plaintiffs a digital copy on the cell phone of one of the individual defendants. *Id.* When plaintiffs requested a paper copy of the search warrant and affidavit in support of the warrant, the individual defendants provided plaintiffs with a copy of the warrant, but they refused to provide a copy of the affidavit, claiming that the affidavit was "sealed." *Id.*

The search warrant permitted the individual defendants to search plaintiff Bryan Davis for the purpose of obtaining any cellular devices; all vehicles; and the residence, curtilage and outbuildings located at 1947 Highway 595 in Lindrith, New Mexico. *Id.* ¶ 21. The warrant further provided that:

> A copy of the Affidavit is attached and made a part of this Warrant. YOU ARE HEREBY COMMANDED, to search forthwith the person and place described in the Affidavit between the hours of 6:00 a.m. and 10:00 p.m. unless I have specifically authorized a nighttime search, for the person and property described in the Affidavit, serving this Warrant together with a copy of the Affidavit, and making the search and if the person or property be found there, to seize the person and the property and hold for safekeeping until further notice of the court. You are further directed to prepare a written inventory of any person or property seized. You are further directed to file the return and written inventory with the Court promptly after its execution.

*Id.* ¶ 22. Despite the provision in the warrant that a copy of the affidavit should be served with the warrant, the individual defendants refused to give plaintiffs a copy of the affidavit. *Id.* ¶ 24. Instead, the individual defendants told plaintiffs that the search warrant was related to an

investigation of Cody Davis, the brother of plaintiff Bryan Davis. *Id.* When the search warrant was executed, Cody Davis was a resident of North Dakota and was visiting his mother for approximately two weeks. *Id.* Cody Davis was staying with his mother, which was "miles away" from plaintiffs' residence. *Id.*

The individual defendants read plaintiffs their *Miranda* rights and interrogated them, and would not let them make use of their residence during the execution of the warrant. *Id.* ¶ 23. The individual defendants searched the plaintiffs' property and also entered plaintiffs' neighbor's land even though plaintiffs told the individual defendants that they were on land that was not theirs. *Id.* The individual defendants did not leave plaintiffs' property until about 12:20 am on March 27, 2016. *Id.* Plaintiffs were hosting a landowners' appreciation barbecue when the individual defendants came to execute the warrant, and many attendees decided not to do business with plaintiffs after this "raid." *Id.*

During the execution of the warrant, the individual defendants seized plaintiff Bryan Davis's cell phone and a rifle with a scope and sling. *Id.* ¶ 25. The individual defendants gave plaintiffs an inventory and return form that listed these items. *Id.* Defendant Hansell signed the inventory and return form as the applicant for the search warrant, and defendant Cole signed the form as another person witnessing the inventory. *Id.*

The search warrant that the individual defendants gave to plaintiffs did not have a case number on it. *Id.* ¶ 26. During the weeks following the execution of the warrant, plaintiffs attempted to learn when their property would be returned, but they couldn't find a case in which the warrant was filed. *Id.* Although Cody Davis eventually was charged with crimes related to illegal hunting in 2016, neither of the two cases in which he was charged appeared to be based on any of the property seized during the execution of the search warrant at plaintiffs' property.

*Id.*  Further, neither case involved any allegations that plaintiffs or their property were involved in the charged offenses in any way.  *Id.*  Plaintiffs did learn during the prosecution of the cases against Cody Davis that defendant Game and Fish had placed a tracking device on Cody Davis's vehicle, and they presumed that information from the tracking device was used to obtain the warrant executed on their property.  *Id.*  Plaintiffs still have never been provided with a copy of the affidavit that was submitted in support of the search warrant.  *Id.*

Plaintiffs allege that the execution of the search warrant was illegal and invalid because the individual defendants refused to provide plaintiffs with a copy of the affidavit in support of the warrant even though the warrant itself stated that the affidavit was part of the warrant and should be served with the warrant.  *Id.* ¶ 27.  They also allege that the execution of the warrant was illegal because the individual defendants continued to execute it until 12:20 am, more than two hours past the time frame authorized by the warrant.  *Id.*  And they allege that the execution of the warrant was illegal because the individual defendants entered and searched property that did not belong to plaintiffs.  *Id.*

Plaintiffs also allege that the individual defendants timed the execution of the warrant so that the execution would occur the day before Easter and at a time when plaintiffs were entertaining guests and clients at their home.  *Id.* ¶ 28.  Plaintiffs assert that this is part of a pattern and practice of years of harassment.  *Id.*  They say that defendant Cole in particular "has gone to extreme length to investigate, and essentially stalk, Plaintiffs' clients."  *Id.* ¶ 29. Defendant Cole has called game and wildlife officials in other states where plaintiffs' clients reside to inquire about their hunting activities and to request hunting, fishing, and drivers' licensing information about those clients.  *Id.*  Defendant Cole also has contacted taxidermists used by plaintiffs' clients to inquire about the services the taxidermists have provided to those

clients.  *Id.*  Plaintiffs also allege that defendant Cole has posed as a potential client of plaintiffs,

asking that plaintiffs provide client references and specific information about their clients' past

hunts, and that he has contacted plaintiffs' past clients to inquire about their past hunts with

plaintiffs.[2]  Plaintiffs also allege that defendant Cole consistently monitors and tracks plaintiffs'

and their clients' social media posts and pictures.  *Id.*  Sometime in approximately 2016,

individual defendants who were unidentified flew a helicopter used by the Department of Game

and Fish "onto" plaintiffs' property and flashed what plaintiffs believed were tranquilizer guns at

plaintiffs.  *Id.* ¶ 34.  The unidentified individual defendants did not have a search warrant and did

not explain their presence on plaintiffs' property.  *Id.*

Plaintiffs also claim that the individual defendants "have seized and harassed Plaintiffs'

clients when those clients are in New Mexico."  *Id.* ¶ 30.  On December 17, 2017, defendant

Nygren and another unidentified conservation officer or game warden pulled plaintiff Bryan

Davis over while he was on a hunt with a client.  *Id.* ¶ 31.  Plaintiffs allege that the two officers

seized and detained plaintiff Bryan Davis and his client with no reasonable suspicion or probable

cause.  *Id.*  The officers "pulled the client to the back of the pickup and interrogated him about

how he knew Plaintiffs."  *Id.*  Plaintiffs allege that their client felt intimidated and scared.  *Id.*

Sometime during the next two days, defendant Nygren, who was with other unidentified

conservation officers or game wardens, approached the sister and niece of one of plaintiffs'

clients at a restaurant in Cuba, New Mexico.  *Id.* ¶ 32.  Defendant Nygren "detain[ed] them to

ask for the client's number," and told them that if the client told the truth about plaintiffs, the

---

[2] The first amended complaint is unclear as to whether plaintiffs allege that only defendant Cole
has engaged in this activity, or that all the individual defendants have engaged in this activity,
but that defendant Cole is the most persistent.  *See* Doc. 33 ¶ 29.  For the purposes of this order,
this distinction is not important.

client would not have any problems.  *Id.*  Later that same night, defendant Nygren saw the client as he was passing through a checkpoint.  *Id.* ¶ 33.  Plaintiffs allege that defendant Nygren seized and detained the client without probable cause or reasonable suspicion to interrogate the client about plaintiffs.  *Id.*

More recently, on November 3, 2018, defendants Nygren and Otero, and at least one other unidentified conservation officer or game warden observed another client hunt a deer with plaintiffs' guide on private land.  *Id.* ¶ 35.  Despite having witnessed the hunt, defendants Nygren and Otero and the other unidentified officer "seized and detained the client" to interrogate him for over two hours until the officers finally conceded the kill was legal.  *Id.*

Plaintiffs allege that they have lost business as a result of the State Defendants' actions.  *Id.* ¶ 37.  They also allege that the State Defendants' actions have caused losses to plaintiffs' reputation, and caused them shame, mortification, and injury to their feelings.  *Id.* ¶ 36.

Plaintiffs initiated this lawsuit in the First Judicial District Court for the State of New Mexico on March 15, 2018.  *See* Doc. 1-2.  The State Defendants removed the case to this Court on May 2, 2018, "pursuant to 28 U.S.C. § 1331, which vests this Court with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."  Doc. 1 at 2.  The State Defendants observed that "[a] federal question is apparent on the face of the Complaint, as Plaintiffs have asserted federal constitutional claims asserting violation of Plaintiffs' Fourth Amendment Rights to be free from unreasonable search and seizure."  *Id.*

On August 23, 2019, the State Defendants moved to dismiss plaintiffs' complaint for failure to state a claim and based on both qualified immunity and governmental immunity.  Docs. 17, 18.  The Court granted those motions on February 26, 2019, but gave plaintiffs until March 19, 2019 to move to amend their complaint.  Doc. 29.  Plaintiffs timely moved to amend their

complaint, Doc. 30, and the Court granted that motion, Doc. 32. Plaintiffs filed their first amended complaint on May 21, 2019. Doc. 33.

## II.    **The First Amended Complaint**

Count I of the first amended complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 40–45. Specifically, count I alleges that the State Defendants violated the plaintiffs' rights to be free from warrantless and unreasonable or illegal searches and seizures under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *Id.* Count II alleges violations of the New Mexico Tort Claims Act. *Id.* ¶¶ 46−56. Count III alleges negligent hiring, training, supervision and retention. *Id.* ¶¶ 57–68. Count IV alleges that the Department of Game and Fish is responsible for the acts of all the individual defendants under a respondeat superior theory. *Id.* ¶¶ 69–73. Count V alleges that the individual defendants were negligent per se "by engaging in tortious and unconstitutional searches and seizures of plaintiffs' persons and property," and that as the individual defendants' employer, the New Mexico Department of Game and Fish, is vicariously liable for the negligence of the individual defendants. *Id.* ¶¶ 74–81.

## III.    **Discussion**

In their motion for judgment on the pleadings to dismiss count I, the State Defendants first argue that the Eleventh Amendment and § 1983 itself bar suits against state agencies and state officials acting in their official capacity. Doc. 38 at 7–9. They also argue that plaintiffs' Fourth Amendment claim against the individual defendants fails to allege sufficient facts to show each individual defendant's personal involvement. *Id.* at 9–11. They further assert that even if plaintiffs allege enough facts to support the personal involvement of any of the individual defendants, these defendants would be entitled to qualified immunity. *Id.* at 11–15.

In their motion to dismiss plaintiffs' remaining claims, the State Defendants argue that they are entitled to judgment on the pleadings on count II because plaintiffs fail to allege sufficient facts showing that the individual defendants are law enforcement officers for which immunity has been waived under the New Mexico Tort Claims Act. Doc. 47 at 6–10. The State Defendants also argue that plaintiffs fail to allege sufficient facts showing that the New Mexico Department of Game and Fish is either vicariously liable or directly liable for the individual defendants' conduct. *Id.* at 10–12. The State Defendants seek judgment on the pleadings on counts III, IV, and V because plaintiffs have not demonstrated a waiver of governmental immunity, nor have they stated a claim. *See id.* at 13–15.

In plaintiffs' response to the State Defendants' motion for judgment on the pleadings to dismiss count I, plaintiffs assert that they've sufficiently pled their claims under 42 U.S.C. § 1983, and that no State Defendant is entitled to qualified immunity. Doc. 41 at 2–5. In their response to the State Defendants' motion for judgment on the pleadings to dismiss counts II, III, IV, and V, plaintiffs argue that their first amended complaint adequately alleges facts sufficient to show a waiver of immunity under the New Mexico Tort Claims Act and that the individual defendants are law enforcement officers. Doc. 48 at 6–13. They also argue that they have adequately pled that the New Mexico Department of Game and Fish is both directly and vicariously liable for the individual defendants' conduct. *Id.* at 13–16. And they argue that they have pled enough facts to state claims in counts III, IV and V, and that there is a waiver of governmental immunity on these claims. *See id.* at 16–20.

For the following reasons, the Court concludes that the Eleventh Amendment precludes plaintiffs' federal constitutional claims against the New Mexico Department of Game and Fish and the individual defendants in their official capacities. The Court further concludes that the

individual defendants in their individual capacities are entitled to qualified immunity on plaintiffs' Fourth Amendment claims.  Because the only remaining claims are state-law claims, the Court declines to exercise supplemental jurisdiction over them and instead will remand this case to the First Judicial District Court.

### A.  Motions for Judgment on the Pleadings

As stated above, a motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).  *See Atl. Richfield Co.*, 226 F.3d at 1160.  The court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, a complaint must include enough facts to state a claim for relief that is plausible on its face.  *Id*. at 555–56.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for relief."  *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotation marks and citation omitted).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Iqbal*, 556 U.S. at 679.  Whether a complaint contains enough facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense."  *Id*.

Furthermore, plaintiff must plead more than labels, conclusions or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Conclusory allegations of liability, without supporting factual content, are insufficient. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677. As such, a proposed amended complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" does not meet the Rule 8 standard and is futile. *Id.* (quoting *Twombly*, 550 U.S. at 557, and Fed. R. Civ. P. 8(a)(2)).

## B. Section 1983 Claims

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but merely provides the mechanism for the enforcement of existing constitutional and federal statutory rights. *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). Further, "Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

To assert a claim under § 1983, a plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by a federal statute or regulation, (2) that was proximately caused (3) by the conduct of a "person" (4) who acted under color of any state statute, ordinance, regulation, custom, or usage. *Summum v. City of Ogden*, 297 F.3d 995, 1000–01 (10th Cir. 2002). The plaintiff also must identify an "affirmative link" between the alleged

constitutional violation and each individual defendant. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

The Supreme Court has made clear that there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Iqbal*, 556 U.S. at 676. "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Because there is no vicarious liability under § 1983, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. Moreover, a § 1983 civil rights action "must be based on the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).

Suits for damages under § 1983 are further restricted by both the Eleventh Amendment to the United States Constitution and § 1983 itself; they cannot be brought against state agencies or against state officials in their official capacities. *See Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 2010). A suit for damages against a state official in his or her official capacity is essentially a suit for damages against the state itself; it therefore is barred by the Eleventh Amendment to the United States Constitution. *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985). A suit for damages under § 1983 also cannot be brought against a state or a state official in his or her official capacity because such a suit can be brought only against a "person," and neither a state nor a state official being sued in his or her official capacity is a "person" within the statutory meaning of the word. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

office. . . . As such, it is no different from a suit against the State itself." *Id.* at 71 (internal citations omitted).

### C. Plaintiffs' Federal Constitutional Claims (Count I)

1. *The Eleventh Amendment and Section 1983 Bar Plaintiffs' Claims Against the Department and the Individual Defendants in Their Official Capacities.*

In their response to the State Defendants' motion for judgment on the pleadings on count I, plaintiffs do not address the State Defendants' argument that the Department of Game and Fish and the individual defendants in in their official capacities are immune from suit under the Eleventh Amendment. *See generally* Doc. 41. In their response to the State Defendants' first motion to dismiss, plaintiffs agreed that "the State of New Mexico and its officials acting in their official capacity are immune from a suit under § 1983." Doc. 21 at 4. Because the New Mexico Department of Game and Fish is "a political subdivision of the State of New Mexico," Doc. 33 ¶ 6, it likewise is immune from suit under the Eleventh Amendment. *See Ross*, 599 F.3d at 1117. And, contrary to the allegation in the amended complaint, *see* Doc. 33 ¶ 6, neither a state agency nor a state official acting in his or her official capacity is a "person" who can be sued under § 1983. *See Will*, 491 U.S. at 70–71. Thus, the Court will dismiss with prejudice plaintiffs' federal constitutional claims against the New Mexico Department of Game and Fish[3]

---

[3] Plaintiffs do not allege that any Department policies or customs caused the purported federal constitutional violations. *See generally* Doc. 33. Even so, as noted in the Court's previous order, the Department of Game and Fish cannot be held liable under a policy or custom theory. *See* Doc. 29 at 10 n.6. The Eleventh Amendment protects states, not municipalities, and liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) is limited "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Will*, 491 U.S. at 70 (quoting *Monell*, 436 U.S. at 690, n.54); *see also Zuni Public School Dist. No. 89 v. State Public Educ. Dept.*, 2012-NMCA-048, ¶ 10; 277 P.3d 1252, 1255 ("The Eleventh Amendment of the United States Constitution immunizes states and their officers acting in an official capacity from claims for money damages or in equity arising under a federal question, unless the state consents to suit.").

and/or any individual defendant acting in his official capacity.  The Eleventh Amendment and
§ 1983 itself bars these claims.  *Ross*, 599 F.3d at 1117.

2.  *The Individual Defendants Are Entitled to Qualified Immunity.*

With respect to the individual defendants, the State Defendants argue that plaintiffs' first
amended complaint does not specify who did what to whom, and instead makes collective
allegations against the individual defendants, which is not permitted.  *See* Doc. 38 at 9–11.  They
also argue that the individual defendants are entitled to qualified immunity because plaintiffs
have not shown a violation of a constitutional right, or that the right was clearly established
when the alleged violation occurred.  *See id.* at 11–15.  Plaintiffs respond that they have met
their pleading requirements, and that they have alleged facts enough to show that the individual
defendants violated their Fourth Amendment rights, and that these rights were clearly established
when the violation occurred.  *See* Doc. 41 at 6 2–5.  I find that plaintiffs have not alleged facts
sufficient to show that any individual defendant violated a constitutional right that was clearly
established when the purported violation occurred, and the individual defendants are entitled to
qualified immunity on all plaintiffs' federal constitutional claims.  I therefore do not address the
State Defendants' first argument—that plaintiffs have not identified an affirmative link between
each alleged constitutional violation and each individual defendant.

Qualified immunity shields government officials performing discretionary functions from
liability for civil damages unless their conduct violates clearly established statutory or
constitutional rights of which a reasonable person would be aware.  *Harlow v. Fitzgerald*, 457
U.S. 800, 818 (1982).  Under the Tenth Circuit's two-part test for evaluating qualified immunity,
a plaintiff must show (1) that each defendant's conduct violated a constitutional or statutory
right, and (2) that the law governing the conduct was clearly established when the alleged

violation occurred. *Baptiste v. J.C. Penney Co*., 147 F.3d 1252, 1255 (10th Cir. 1998); *accord Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Unless both prongs are satisfied, the defendant will not be required to "engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The Court is not required to address the two prongs of the test in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court's decision in *Pearson* permits courts to grant qualified immunity without first deciding whether a constitutional violation occurred so long as the right claimed to be violated was not clearly established. *Id*. The right that is alleged to have been violated must be "clearly established" not just as a general proposition (for example, in the way the right to free speech is clearly established), but "in a more particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson*, 483 U.S. at 640. Stating the right too broadly would destroy the balance that the Supreme Court has sought to establish "between the interests in vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Id*. at 639 (quotation and citation omitted).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d

1147, 1161 (10th Cir. 2008) (internal quotations omitted).  "The plaintiff is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity."  *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (internal quotations omitted).  The degree of specificity required depends on the egregiousness of the challenged conduct; "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiffs here broadly define the contours of the constitutional rights that they claim the individual defendants violated as the right "to be free of illegal searches and seizures."  *See* Doc. 41 at 4.  This obviously is too broad.  *See Anderson*, 483 U.S. at 639–40 (the test of "clearly established law" cannot be applied at a level that is too abstract and general).  Furthermore, the Fourth Amendment protects the right to be free from *unreasonable* searches and seizures, U.S. CONST. amend. IV (emphasis added), not necessarily all *illegal* searches and seizures.  As the Supreme Court repeatedly has said, the touchstone of the Fourth Amendment is reasonableness, *see, e.g.*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("the ultimate touchstone of the Fourth Amendment is 'reasonableness'"), not whether an officer complies with state law in executing a warrant, *see Virginia v. Moore*, 553 U.S. 164, 178 (2008) ("the arrest rules that the officers violated were those of state law[;] . . . it is not the province of the Fourth Amendment to enforce state law").  Thus, to analyze plaintiffs' Fourth Amendment claims, the Court will

review the first amended complaint to determine whether the alleged "illegalities" associated with either a search or a seizure constitutes a constitutional violation that was clearly established when it occurred.

    a.   <u>Refusing to Provide Plaintiffs with a Copy of the Affidavit in Support of the Warrant</u>

Plaintiffs complain that the individual defendants only provided them with a copy of the search warrant, not a copy of the affidavit, even though the warrant stated that the affidavit was part of the warrant and should be served with the warrant. Doc. 33 ¶¶ 20, 22. The State Defendants correctly point out that there is no federal requirement that an affidavit in support of a search warrant be served along with the warrant itself. *See* Doc. 38 at 13; *see also* FED. R. CRIM. P. 41(f)(1)(C) ("The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises the property was taken . . . ."). Indeed, the Tenth Circuit has held, albeit in an unpublished decision, that there is no constitutional requirement that an individual be given a copy of a warrant before conducting a search of his or her property, nor is delivery of the affidavit necessary to a valid search. *Griffin v. Lemaster*, 179 F. App'x 555, 561 (10th Cir. 2006) (unpublished); *see also United States v. Grubbs*, 547 U.S. 90, 97–99 (2006) (warrant need only identify the place to be searched and the persons or things to be seized; neither Rule 41 nor the Fourth Amendment requires "the executing officer [to] present the property owner with a copy of the warrant before conducting his search"). Thus, there was no clearly established constitutional requirement on March 26, 2016—the day the search warrant was executed—that the individual defendants provide plaintiffs with a copy of the affidavit in support of the search warrant along with the warrant itself. The individual defendants are entitled to qualified immunity for not providing plaintiffs with a copy of the affidavit.

b. <u>Refusing to Let Plaintiffs Make Use of Their Residence During the Execution of the Warrant</u>

Plaintiffs also complain that the individual defendants "would not let Plaintiffs make use of their residence" during the execution of the search warrant. Doc. 33 ¶ 23. Plaintiffs, however, have not cited to a Tenth Circuit or Supreme Court case that clearly establishes that excluding occupants of a residence from their home during the execution of a search warrant violates the Fourth Amendment. Indeed, the Court has only found cases that would lead to the opposite conclusion.

In *Michigan v. Summer*, the Supreme Court held that officers executing a search warrant lawfully may restrain persons present at the searched premises. 452 U.S. 692, 705 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.") (footnotes omitted). The Court observed that a search warrant "may give rise to sudden violence or frantic efforts to conceal or destroy evidence," and thus the risk of harm to officers and occupants alike "is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702–03. Although the Court indicated that the officers might exceed their proper authority in an "unusual case" involving "special circumstances, or possibly a prolonged detention," it held that the "routine" detention of residents while a search is conducted is constitutional. *Id.* at 705 n.21.

In *Illinois v. McArthur*, the Supreme Court held that police officers acted reasonably and did not violate the Fourth Amendment when they prevented a man—who they had probable cause to believe had hidden marijuana in his home—from entering his home for two hours while they obtained a search warrant. 531 U.S. 326, 328 (2001). The Court explained that the police officers reasonably believed that if the resident was permitted to enter his home, he might destroy the evidence they were seeking to obtain. *Id.* at 337. In the Court's view, the officers

"imposed a restraint that was both limited and tailored reasonably to secure law enforcement needs while protecting privacy interests." *Id.*

Given these Supreme Court holdings, plaintiffs' complaint that the individual defendants did not allow them to access their home during the execution of the search warrant does not state a constitutional violation. Plaintiffs do not allege that the officers unreasonably prolonged the search or placed them in unreasonable conditions while the search was conducted. *See generally* Doc. 33. Plaintiffs don't even assert that they were detained, *see id.*, but even if they were detained, that also would not amount to a constitutional violation, *see Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure'"). Officers executing a search warrant routinely refuse to permit the occupants of the premises unlimited access to the premises because of concerns regarding the destruction of evidence and/or officer safety. Indeed, relying on *Summers* and *Muehler*, the Tenth Circuit has held that "[a]s long as a person is an occupant of the premises identified in a search warrant, officers have 'categorical' authority to detain him or her for the duration of the search. . . . Whether the detention in fact facilitates one of the governmental interests acknowledged in *Summers*—preventing flight, minimizing risk, or completing the search in an orderly manner—is irrelevant." *United States v. Johnson*, 414 F. App'x 176, 179 (10th Cir. 2011) (unpublished); *see also United States v. Sanchez*, 555 F.3d 910, 915–19 (10th Cir. 2009) (holding that officers had authority to detain individual standing in driveway of house when they arrived to execute a search warrant on the house). Surely if the individual defendants had the authority to detain plaintiffs during the execution of the search warrant on plaintiffs' property, they had the authority to restrict plaintiffs' access to the property being searched. Refusing to give plaintiffs

access to their home during the search did not violate the plaintiffs' Fourth Amendment rights, and the individual defendants are entitled to qualified immunity on this claim.

### c. Extending the Search Until 12:20 am

Plaintiffs contend that the individual defendants violated their Fourth Amendment rights by continuing to search their property after 10:00 pm when the warrant only authorized a search between the hours of 6:00 am and 10:00 pm. *See* Doc. 33 ¶¶ 22, 23, 27. Defendants respond that the individual defendants arrived at plaintiffs' property to execute the warrant at 2:30 pm— well within the time period proscribed by the warrant—and that the fact that search was not completed until shortly after midnight is not a per se constitutional violation. Doc. 38 at 12–13. Because the right to be free from an extended search was not clearly established when the warrant was executed, the individual defendants are entitled to qualified immunity on this claim.

The Tenth Circuit has held that the nighttime execution of a daytime warrant violates the Fourth Amendment. *See O'Rourke v. City of Norman*, 875 F.2d 1465, 1475 (10th Cir. 1989). In *O'Rourke*, officers went to the plaintiffs' home at 10:00 pm to execute an Oklahoma state day-time bench warrant for contempt. *Id.* at 1467. Under Oklahoma law, nighttime started 30 minutes after sunset and ended 30 minutes before sunrise. *Id.* at 1471 & n.18. In other words, the execution of the warrant began well after the authorized hours. *See id.*

In this case, the individual defendants arrived at the plaintiffs' home to execute the warrant at 2:30 pm, seven and a half hours before the 10:00 pm deadline for executing the warrant. Doc. 33 ¶¶ 19, 22. The individual defendants reasonably could have concluded that finishing the search on the same day was less intrusive than securing the property and continuing to search it the next morning at 6:00 am. *See United States v. Squillacote*, 221 F.3d 542, 556–57 (4th Cir. 2000) ("Because the search of the Appellants' home was commenced in the daytime, as

required by the warrant, the FBI agents reasonably could have believed (if their actions after 10:00 p.m. could be considered a search) that it was proper to continue the search into the night[,] . . . [or] that it was proper to station agents inside the house after the search was suspended each evening in order to guard against the possible destruction of evidence."). Indeed, several circuit courts have held that there is no violation of the terms of the warrant if a search begins in the daytime and continues into the night, even if the warrant authorizes only a daytime search. *See United States v. McCarty*, 475 F.3d 39, 44 (1st Cir. 2007) (holding that there was no Fourth Amendment violation where search warrant authorized search between 7:00 am and 9:00 pm, officers gained entry at 8:57 pm, search commenced at 8:58 pm and continued to 10:35 pm); *see also United States v. Young*, 877 F.2d 1099, 1104–05 (1st Cir. 1989) ("to interrupt a search, perhaps to apply for a new warrant each day while guarding the house against entry each night, . . . would often increase, rather than diminish, inconvenience to residents, by extending the total time during which their residence was subject to police intrusion"); *United States v. Burgard*, 551 F.2d 190, 193 (8th Cir. 1977) (refusing to suppress "the fruits of the search simply because the search was still in progress at 10:00 p.m. and was not completed before 11:00 p.m." where search began well before 10:00 pm); *United States v. Joseph*, 278 F.2d 504, 505 (3rd Cir. 1960) (search that began at 4:00 pm and not completed until after 10:00 pm did not violate the terms of the daytime warrant); *State v. Santiago*, 2010-NMSC-018, ¶¶ 24, 25, 148 N.M. 144, 149, 231 P.3d 600, 605 (nighttime search of defendant's home pursuant to daytime warrant did not violate the state or federal constitutions when officers had cleared and secured home in the afternoon and knew the home was unoccupied when they reentered after 10:00 pm to execute the warrant).

In short, the Court could not find—nor did the plaintiffs cite—a Tenth Circuit or Supreme Court case that holds that a continuing to execute a search warrant into the night when officers started to execute the warrant well before the time permitted in the warrant violates the Fourth Amendment. Thus, any right that plaintiffs may have to be free of such searches was not clearly established in March 2016, when the search warrant at issue here was executed. The individual defendants are entitled to qualified immunity on this claim.

        d.   Entering and Searching Property that Did Not Belong to Plaintiffs and Stopping and/or Questioning Plaintiffs' Clients

Plaintiffs allege that the execution of the search warrant was illegal because the individual defendants "entered and searched property that did not belong to Plaintiffs even after being placed on notice that they were entering Plaintiffs' neighboring property." Doc. 33 ¶ 27. Plaintiffs further allege several other instances where the individual defendants stopped and/or questioned plaintiffs' clients. *See id.* ¶¶ 30–33, 35. The individual defendants correctly point out that plaintiffs cannot recover damages for violations of another person's constitutional rights. *See* Doc. 38 at 14; *see also Archuleta*, 897 F.2d at 497 (Court must "keep firmly in mind the well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). Thus, the individual defendants are entitled to judgment as a matter of law on any claim that they violated the constitutional rights of someone other than the plaintiffs.[4]

—————————————————

[4] The first amended complaint contains one allegation of a seizure that is personal to plaintiff Bryan Davis. Specifically, plaintiffs allege that

     on or about December 17, 2017[,] Defendant Nygren and another unidentified conservation officer and/or game warden pulled Plaintiff Bryan Davis over, while on a hunt with a client, seizing and detaining them with no reasonable suspicion or probable cause, and pulled the client to the back of the pickup and interrogated him about how he knew Plaintiffs. The guest felt intimidated and scared.

e. "Flashing" Tranquilizer Guns at Plaintiffs from a Helicopter

Plaintiffs claim in their first amended complaint that the individual defendants violated their "right to be free from excessive force by police officers."  Doc. 33 ¶ 44(c).  The only mention of any show of force in the first amended complaint is that "sometime in approximately 2016, the Individual Defendants, unidentified in a helicopter used by Defendant Game and Fish, flew a helicopter onto Plaintiffs' property and flashed[] what Plaintiffs believed to be tranquilizer guns a Plaintiffs."  *Id.* ¶ 34.  This allegation does not amount to a Fourth Amendment violation.

The Fourth Amendment protects individuals against "unreasonable searches and seizures."  U.S. CONST. amend. IV.  To state a claim for excessive force under the Fourth Amendment, a plaintiff must demonstrate that a "seizure" occurred and that the seizure was "unreasonable."  *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989).  A seizure requires the "intentional acquisition of physical control" of the person being seized.  *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000).  "[W]ithout a seizure, there can be no claim for excessive use of force."  *Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015).

Here, plaintiffs make no claim that they were "seized," or even that the officers were attempting to seize them, when the officers "flashed" tranquilizer guns at them.  Because there was no seizure, there could be no unreasonable seizure, even if the unidentified individual officers in fact displayed tranquilizer guns as they were flying over plaintiffs' property.  *See Farrell v. Montoya*, 878 F.3d 933, 939 (10th Cir. 2017) ("As there was no seizure, there could be

---

Doc. 33 ¶ 31.  This conclusory allegation of an unconstitutional seizure of Bryan Davis, without any supporting facts, is insufficient and fails to meet the Rule 8 standard.  *See Iqbal*, 556 U.S. at 677.  This allegation fails to state a claim for relief and will be dismissed on that basis.

no unreasonable seizure, even if [the officer] was using deadly force.  The [plaintiffs'] claims

against [the officer] fail for lack of any violation of the Fourth Amendment.").  Without a

seizure, plaintiffs cannot prevail on a claim of excessive force.  The individual defendants are

entitled to qualified immunity on this claim because no constitutional violation has been alleged.

> f.  Alleged Pattern and Practice of Harassing Plaintiffs and Executing
> Warrant During a Social Function

Plaintiffs appear to have repackaged the harassment claim included in their original

complaint as a general claim that the individual defendants have deprived them of their liberty

interests without due process by damaging their reputation in a number of ways, including

executing the search warrant while plaintiffs were hosting a "landowners' appreciation

barbecue" and generally harassing plaintiffs' customers.  *See* Doc. 33 ¶¶ 23, 28–33, 35–37.  The

State Defendants argue that plaintiffs have failed to state a claim based on the government's

impugning of their "good name, reputation, honor, or integrity."  Doc. 38 at 10.  I agree that

plaintiffs have failed to allege sufficient facts to show a violation of their due process rights.

The Fourteenth Amendment provides that citizens may not be deprived of life, liberty, or

property without due process.  *See Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1242

(10th Cir. 2000).  "Where a person's good name, reputation, honor, or integrity is at stake

because of what the government is doing to him, a protectible liberty interest may be implicated

that requires procedural due process in the form of a hearing to clear his name."  *Jensen v.

Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir.1993) (internal quotations

omitted).  But damage to one's reputation alone is not enough to implicate due process

protections.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (stating that "reputation alone, apart

from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself

sufficient to invoke the procedural protection of the Due Process Clause"); *McGhee v. Draper*,

639 F.2d 639, 643 (10th Cir.1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").  Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her "good name, reputation, honor, or integrity," *Jensen*, 998 F.2d at 1558, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law." *Paul*, 424 U.S. at 710–11.  This is often referred to as the "stigma plus" standard.  *See, e.g.*, *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001); *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999); *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999); *Greenwood v. New York*, 163 F.3d 119, 124 (2d Cir. 1998).

Here, plaintiffs do not allege that any individual defendant made a false statement about either plaintiff that is sufficiently derogatory to injure his or her reputation.  *See generally* Doc. 33.  Indeed, plaintiffs make no effort in their response to the State Defendants' motion to address the State Defendants' argument that plaintiffs have not stated a due process claim.  *See* Doc. 41 at 4–5; Doc. 46 at 6–7.  The only federal constitutional right that the plaintiffs mention in their response is their Fourth Amendment right to be free of unreasonable[5] searches and seizures.  *See* Doc. 41 at 4–5.  Plaintiffs have failed to allege facts that show that any individual defendant violated their due process rights, and the Court will dismiss plaintiffs' federal due process claim.

---

[5] As noted above, plaintiffs refer to the right to be free of "illegal" searches and seizures, whereas the Fourth Amendment protects individuals from "unreasonable" searches and seizures. *See* Doc. 41 at 4–5.

### B. Plaintiffs' Remaining State Law Claims

A federal court has jurisdiction over a state-law claim brought in a case that also involves a federal question when the federal-law claims and state-law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The Tenth Circuit has held, however, that district courts generally should decline to exercise jurisdiction over state claims when no federal claims remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). The Supreme Court similarly has counseled that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gibbs*, 383 U.S. at 726.

Here, plaintiffs' first amended complaint does not clearly delineate between the plaintiffs' federal claims and their state claims. For example, count I alleges that the State Defendants violated the plaintiffs' rights under both the U.S. Constitution and the New Mexico State Constitution. *See, e.g.*, Doc. 33 ¶¶ 41, 42, 43. Count III alleges negligent hiring, training, supervision and retention in conjunction with the individual defendants' alleged violations of plaintiffs' "constitutional rights" without specifying whether plaintiffs are referring to their federal or state constitutional rights, or both. *See, e.g., id.* ¶ 60. However, as explained above, plaintiffs have failed to allege any viable federal constitutional claim against the State Defendants, and those claims are dismissed with prejudice. Thus, to the extent that state

constitutional claims and state tort claims remain, the Court declines to exercise jurisdiction over those claims and remands them to the First Judicial District Court.

**IV.     Conclusion**

For the foregoing reasons, the Court GRANTS the State Defendants' Motion for Judgment on the Pleadings to Dismiss Count I of Plaintiffs' First Amended Complaint on the Basis of Qualified Immunity and Failure to State a Claim (Doc. 38) as follows:

(1) Plaintiffs' federal constitutional claims in count I of their first amended complaint are dismissed with prejudice.

(2) To the extent that any of plaintiffs' claims in counts II through V are based on a federal constitutional violation, those federal constitutional claims are dismissed with prejudice.

The Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims and remands this case to the First Judicial District Court.  The Court therefore DENIES Defendants' Motion and Memorandum for Judgment on the Pleadings to Dismiss Plaintiffs' Claims in Counts II, III, IV and V on the Basis of Governmental Immunity (Doc. 47) to the extent that those claims allege violations of state law.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge